IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

KINLEY HULLOM,

    Plaintiff,

 vs.                                     No. 1:08-cv-01227

CITY OF JACKSON, TENNESSEE,

    Defendants.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Pending before the Court is the motion of the Defendant, City of Jackson, Tennessee, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entry ("D.E.") No. 27.) The Plaintiff, Kinley Hullom, has responded, and the motion is now appropriate for disposition. (D.E. No. 32). For the reasons given hereinafter, the Court **GRANTS** the Defendant's motion.

FACTUAL BACKGROUND

Kinley Hullom ("Hullom") has been employed as a firefighter with the City of Jackson (the "City" or "Jackson") since 1972. (D.E. No. 1, Complaint, ¶ 9.) He became a Captain in the fire department in 1988 and was the first African-American ever to be promoted to the position of Battalion Chief. (Id.) Hullom was suspended twice—on June 29, 2007 and on August 20, 2007—and later was demoted to Captain for dereliction of duty, failure to provide important information to responding emergency personnel, not making proper command decisions during

1

an emergency, and providing a false statement to an investigator during an investigation. (Id. at ¶¶ 9-10.) All of these charges stemmed from an incident on June 3, 2007 involving a vehicle crash and fire. (Id. at ¶ 11.) A fire truck—engine 62—was dispatched to the scene, with acting captain Nate Bell ("Bell") aboard. (Id.) The dispatcher informed Hullom that someone was trapped inside the vehicle, but Plaintiff did not relay this information to Bell. (D.E. No. 27, City's Motion for SJ, p. 3.)[1] Hullom also did not send an extrication unit to the scene of the accident until firefighters on the scene confirmed that a person was inside the burning vehicle. (Id.) The City disciplined him for his handling of the situation, although he contends that this action was motivated by discrimination based upon his race. (D.E. No. 1, Complaint, ¶ 11.) After some administrative proceedings involving the Fire Chief and the Mayor of Jackson, this lawsuit ensued. (Id. at ¶¶ 9, 16.)

Hullom filed his complaint against the City on September 26, 2008, alleging causes of action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and the Tennessee Human Rights Act ("THRA"). (D.E. No. 1, Complaint, ¶¶ 33-45.) In an Order dated June 3, 2009, the Court dismissed Plaintiff's claim under the THRA. (D.E. No. 21.) Defendant now seeks summary judgment on Plaintiff's two remaining federal claims.

STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that
> judgment . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

---

[1] Although the Court is to view all facts in the light most favorable to the Plaintiff when ruling on a summary judgment motion, some of the facts in this matter have been articulated solely by the Defendant, and the Plaintiff has not objected to them. Therefore, for purposes of setting forth the background of this case more fully, the Court will cite Defendant's statement of undisputed facts in addition to those in the complaint.

Fed. R. Civ. P. 56(c)(2); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). When the motion is supported by documentary proof, such as depositions and affidavits, the nonmoving party may not rest on the pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324; *see also* Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir.1998). It is insufficient for the nonmoving party "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [an] asserted cause[] of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

ANALYSIS

A.   42 U.S.C. § 1981

Citing Arendale v. City of Memphis, 519 F.3d 587, 598-99 (6th Cir. 2008) *reh'g & reh'g en banc denied* (July 31 2008), the City argues that § 1981 does not create an independent cause of action against municipalities. (D.E. No. 27, City's Motion for SJ, p. 6.) In his response, Hullom does not contest this assertion, which the Court finds to be correct. Therefore, Defendant is entitled to summary judgment on Hullom's claim under 42 U.S.C. § 1981.

B.   Title VII

Plaintiff's remaining claim for relief is that he was a victim of discrimination in violation of Title VII, which prohibits employers from discriminating against employees on the basis of race. *See* 42 U.S.C. § 2000e-2(a)(1).

"The ultimate question in every employment discrimination case involving a claim of disparate treatment[, such as that alleged here,] is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153, 120 S. Ct. 2097, 2111, 147 L. Ed. 2d 105 (2000).  At the summary judgment stage in a Title VII case, a plaintiff must "adduce either direct or circumstantial evidence in order to prevail." Upshaw v. Ford Motor Co., 576 F.3d 576, 584 (6th Cir. 2009).  Hullom bases his assertion on the latter, which invokes the McDonnell Douglas/Burdine burden-shifting paradigm.  *See* Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); Upshaw, 576 F.3d at 584.  Under this analysis, a plaintiff first must establish a prima

facie case of race discrimination.  Upshaw, 576 F.3d at 584.  If he is successful, the burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for its action.  Id.  In the event the employer carries its burden, it is incumbent upon the plaintiff to show by a preponderance of the evidence that the reason proffered by the employer was pretextual.  Id. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  Reeves, 530 U.S. at 148.  Throughout the McDonnell Douglas/Burdine analysis, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Upshaw, 576 F.3d at 584 (citation and internal quotation marks omitted).

In order to establish a prima facie case of race discrimination, the plaintiff must show that "(1) [he] is a member of a protected group, (2) [he] was subject to an adverse employment decision, (3) [he] was qualified for the position, and (4) [he] was replaced by a person outside of the protected class."  Russell v. Univ. of Toledo, 537 F.3d 596, 604 (6th Cir. 2008).  "A plaintiff may also satisfy the fourth prong of a prima facie case showing by adducing evidence that [he] was treated differently than similarly situated non-protected employees."  Id. (citation, alterations, and internal quotation marks omitted).  The burden of establishing a prima facie case of discrimination is not an onerous one, but the plaintiff must prove pretext by a preponderance of the evidence.  Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 660 (6th Cir. 2000), *reh'g & suggestion for reh'g en banc denied* (May 4, 2000); Burdine, 450 U.S. at 252-53.

With respect to the prima facie case, the City concedes that Hullom satisfies the first two elements: he is "clearly a member of a protected class and clearly suffered an adverse employment action when he was suspended and demoted from the position of battalion chief to

captain. . ..." (D.E. No. 27, City's Motion for SJ, p. 8.) However, the Defendant contends that Plaintiff's actions on June 3, 2007 demonstrate that he was not qualified for his job, and in addition, "he has produced no admissible evidence that anyone in his position outside his protected class was treated differently or that he was replaced by someone outside his protected class." (Id.) Even if Plaintiff has set forth a prima facie case, the City nevertheless contends that it clearly has proffered legitimate reasons for the disciplinary action it took against him—reasons that Hullom is unable to prove are pretextual. (Id. at pp. 8-14.)

Plaintiff does not directly respond to any of the City's contentions. Indeed, the response is incomprehensible in many places, given the host of typographical, grammatical, and punctuation errors that litter his memorandum. Moreover, due to the fact that the same two-paragraph section appears verbatim four times in the response, most of Plaintiff's statements are, at best, tangentially related to the City's arguments. However, the Court will attempt to extrapolate the arguments that Plaintiff presumably intended to make.

    A.    <u>Whether Hullom Was Qualified For His Position</u>

With respect to the third prong of the prima facie case, the City maintains that Hullom's performance of his duties—particularly on June 3, 2007 and in the course of the investigation

that followed—demonstrates that he was not qualified for his position in the first place.[2] (D.E. No. 27, City's Motion for SJ, pp. 8-13.) Specifically, the City contends that the dispatcher—Ann Stockdale ("Stockdale")—informed Hullom of the possibility that someone was trapped inside the vehicle that was on fire, but he failed to relay this information to the fire engine dispatched to the scene. (Id.) Moreover, despite his knowledge that someone might be inside, Hullom did not send an extrication unit to the scene of the fire:

> Hullom blames everyone else from the dispatcher to engine 62 to the sheriff's department and EMS workers for the failure to send the extrication unit to the accident that night. However, there is no dispute that Hullom was the highest ranking City of Jackson firefighter on duty the night of June 3, 2007 and that, therefore, he had the ultimate responsibility for the City of Jackson fire department and its firefighters.

(Id. at pp. 12-13.) Furthermore, the City contends that even if Plaintiff is able to establish a prima facie case, these facts nevertheless constitute legitimate, non-discriminatory grounds for his demotion. (Id. at pp. 8-14); Upshaw, 576 F.3d at 584.

As to the City's claim that he should have ordered an extrication unit to the scene of the fire, Hullom avers that "based on his experience, [he] knew there were sufficient hand tools present on Engine 62 to perform any kind of extraction if necessary." (Id. at p. 5.) With respect

---

[2] The City's argument in this regard appears to be that its legitimate, nondiscriminatory reason for disciplining Hullom doubles as its explanation as to why he was unqualified for his position in the first place. This contention impermissibly conflates two different parts of the McDonnell Douglas paradigm, as both this Court and the Sixth Circuit have held repeatedly. *See, e.g.*, White v. Columbus Metro. Hous. Auth., 429 F.3d 232, 242 (6th Cir. 2005) (citations omitted) (reiterating the Sixth Circuit's warning "against conflating the first (prima facie case) and second (articulation of legitimate nondiscriminatory reason) steps in the McDonnell Douglas analysis"); Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 658-61 (6th Cir. 2000), *reh'g and suggestion for reh'g en banc denied* (May 4, 2000) (finding that the district court impermissibly juxtaposed the "distinct stages of the McDonnell Douglas inquiry by using [the defendant's] 'nondiscriminatory reason' as a predicate for finding Cline to have failed to make a prima facie case"); Crawford v. Muvico Theaters, Inc., 2006 WL 522391, at *5-*6 (W.D. Tenn. 2006) (citing White and Cline, and finding that Muvico likewise had attempted to conflate the prima facie case with the next step in the McDonnell Douglas analysis, which is analyzing an employer's legitimate, nondiscriminatory justifications). Thus, although the Plaintiff's prima facie case fails on other grounds, it is worth noting that to the extent the City is attempting to offer the basis for Hullom's demotion as a predicate for claiming he was unqualified for his job in the first place, such a position impermissibly conflates two parts of the inquiry.

to Defendant's argument that he performed his job inadequately on June 3, 2007, Plaintiff claims that this assertion "disregards the fact that Hullom contends that Nate Bell misrepresented his status as being on the scene when really he was not on the scene . . . in fact Engine 62 was a [sic] 100 yards away from the scene." (D.E. No. 32, Response to City's Motion for SJ, p. 4.) Plaintiff appears to be insisting that the reason he failed to alert Bell about the possible presence of a person in the car was that Bell was some distance away. This contention has no relevance to the issue of whether or not Hullom should have informed the firefighters about someone being trapped inside the burning car. Nevertheless, the Court need not decide whether Plaintiff has established the third prong of his prima facie case because he has not satisfactorily pled the fourth one.

      B.      <u>Whether Hullom Was Treated Differently Than Other Similarly Situated, Non-Protected Employees</u>

In response to Defendant's claim that he is unable to establish the fourth prong of the <u>McDonnell Douglas/Burdine</u> test, Hullom submits the following:

> City has treated Chief Hullom less favorably than other firefighters similarly situated. Specifically, on August 16, 1990, a . [sic] 19 month old girl was killed and her mother was in critical condition after a Jackson Fire Department truck smashed into their car after running a red light. The truck, snorkel One [sic] was being driven by Driver Joe Johnson of the Jackson Fire Department. Joe Johnson ran the red light, causing the death of the mother and child. Joe Johnson was never demoted. In fact he was promoted within the department.

(D.E. No. 32, Response to Motion for SJ, p. 9.) This narrative offers no admissible proof that a similarly situated employee outside of the protected class was treated differently. Chief among the defects in this passage is the fact that Plaintiff never reveals Joe Johnson's race. Even if the Court assumes that Joe Johnson is Caucasian, this response fails to prove that Johnson was

treated differently than Hullom.

When explaining the "similarly situated" portion of the prima facie case, the Sixth Circuit has held:

> [I]t is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly situated *in all respects*. . . . [T]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated"; rather the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in "all of the *relevant* aspects." . . . [T]his Court has asserted that in applying the standard that plaintiff must show that [she] is treated differently than similarly situated employees from outside the class courts should not demand exact correlation, but should instead seek relevant similarity.

Clayton v. Meijer, Inc., 281 F.3d 605, 610-11 (6th Cir. 2002) (internal citations and quotation marks omitted) (emphasis in original). Plaintiff has not established that the "comparable" he has identified—Joe Johnson—is similarly situated to the Plaintiff *in all relevant respects*. From the few details provided, the Court cannot determine the exact circumstances surrounding the "Joe Johnson events." Johnson's incident was not analogous to Hullom's in any way—Johnson's case purportedly concerned an instance of negligence, whereas Hullom's involved an alleged failure to perform his duties properly with respect to protocol involving a victim inside a burning car. Thus, Plaintiff has submitted insufficient information to allow the Court to assess whether Johnson was treated differently under a similar set of circumstances. At best, Plaintiff has alleged merely that almost twenty years ago, a firefighter was not disciplined for his role in a traffic accident. Without more, the Court is unable to find that Hullom was treated differently than a similarly situated, non-protected employee. *See, e.g.*, Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998), *reh'g & suggestion for reh'g en banc denied* (Oct. 19,

1998) (internal citations and quotation marks omitted) ("to be deemed 'similarly-situated' in the disciplinary context, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it"); Bigham v. Health Express, Inc., 346 F. Supp. 2d 942, 946 (E.D. Mich. 2004) ("The Court finds no evidence that a white employee had the same quantity or quality of deficiencies and was treated any better.").

C.  Pretext

Even assuming that Plaintiff adequately has established a prima facie case of race discrimination, he cannot demonstrate that the City's justifications for his demotion were pretextual. Upshaw, 576 F.3d at 584. Hullom never directly addresses the issue of pretext, and indeed, the only relevant claim he makes is that demotion is too draconian a remedy for his alleged misconduct. (D.E. No. 32, Response to City's Motion for SJ, p. 10.) Essentially, Plaintiff's argument is that because a demotion was not a fair punishment, race discrimination must have been the true motivation behind it. This assertion must fail. First, Plaintiff has presented no evidence for his contention that "the proffered reason is patently insufficient to justify the challenged conduct." (Id.) In other words, he has not proven that demotion was a disproportionate sanction for his misconduct. As a result, Plaintiff's response amounts to nothing more than a conclusory allegation. "Conclusory allegations . . . are insufficient to withstand a motion for summary judgment." Young v. State Farm Mut. Auto. Ins. Co., 868 F. Supp. 937, 945 (W.D. Tenn. 1994) (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 585 (6th Cir. 1992)). In Young, the court stated that "Plaintiff's evidence essentially amounts to her personal belief . . . that she was discriminated against." Id. "[R]umors, conclusory allegations and subjective beliefs

10

. . . are wholly insufficient evidence to establish a claim . . . as a matter of law." Mitchell, 964 F.2d at 585. Thus, a "plaintiff must point to some factual support in the record beyond her . . . allegations . . . .." Young, 868 F. Supp. At 946 (citing Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993) (self-serving affidavits and depositions without factual support in the record, standing alone, will not defeat a motion for summary judgment) (internal citation omitted)).

More importantly, Hullom has offered no proof that race played any part in the employment decisions that affected him. The City has submitted ample evidence supporting its claims that Hullom's conduct on June 3, 2007 warranted his demotion. Conversely, Plaintiff has submitted nothing to substantiate his claim that he was a victim of race discrimination. Absent such evidence, Plaintiff is nothing more than a "victim" of an employment action with which he disagrees, a situation that is insufficient to form the basis of a Title VII claim. *See* Mayberry v. Endocrinology-Diabetes Associates, 926 F. Supp. 1315, 1323-24 (M.D. Tenn. 1996) (citing Wrenn v. Gould, 808 F.2d 493, 502 (6th Cir. 1987) ("an employee's subjective perception that [he] has suffered discrimination, in the absence of objective evidence substantiating such perception, does not constitute probative evidence of such discrimination.. . ." Employers are not required to "make fair or accurate assessments of employees' abilities . . . absent discriminatory intent or impact")). Thus, the City is entitled to summary judgment on Hullom's Title VII claim.

CONCLUSION

For the reasons set forth herein, the City's motion for summary judgment as to Plaintiff's claims under 42 U.S.C. § 1981 and Title VII is **GRANTED**. The clerk is directed to enter judgment in favor of the Defendant.

**IT IS SO ORDERED** this, the 24th day of March, 2010.

                                              s/ J. DANIEL BREEN
                                              UNITED STATES DISTRICT JUDGE